Beginning with Cases Argued at the
**JANUARY TERM, 1913.**

BARTLETT-HAYWARD COMPANY, A Body Corporate, *vs.* THE STATE OF MARYLAND, Use of Katherine May Smith, Widow, James Thomas Smith and Joseph Smith, Infant Children of James H. Smith, Deceased.

*Employer and employee: safe place for work; hidden defects; fellow servant; when no defense; assumption of risk.*

It is the duty of an employer to furnish his employees safe appliances for the work on which they are engaged; and this duty is one which could not be delegated.   p. 5

Where the employer furnished the materials for a high scaffolding, upon which the employees were to work, and the construction of the scaffold was supervised by the general superintendent, to whom had been given control and direction of the entire work, the principle of fellow servant can not be invoked to relieve the employer from liability for injuries to, or death of an employee, resulting from the faulty materials used in the construction of the scaffold.   pp. 5-6

Where a scaffold for the use of workmen was built of an apparently strong and usual construction, but was fastened together with nails of insufficient length to hold it securely together, it was not an obvious danger of a kind to free the employer of assumption of risk.   p. 5

Whether the defendant did neglect to furnish nails of a sufficient length was a question for the jury.   p. 5

*Decided February 13th, 1913.*

Appeal from the Baltimore City Court (DAWKINS, J.).

Suit was brought against the Bartlett-Hayward Company for the use of the widow and children of James H. Smith, who had been killed by the fall of a scaffold on which he was working while in the employ of the defendants; the judgment was in favor of the equitable plaintiffs, with a verdict for $4,000, apportioned as follows:

To Catherine Mary Smith, widow............$1,000
To James Thomas Smith, infant............ 1,400
To Joseph Smith, infant.................... 1,600

                                    $4,000

From which judgment this appeal was taken.

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Walter C. Clark* (with whom was *Robert R. Carman* and *George W. Dexter* on the brief), for the appellant.

*William W. Powell* (with whom were *Robert E. Lee, Paul Johannsen* and *M. Maurice Meyer* on the brief), for the appellee.

URNER, J., delivered the opinion of the Court.

This is a suit by the State for the use of the widow and infant children of James H. Smith, who was killed by the collapse of an elevated platform on which he was working, as an employee of the appellant corporation, in the construction of an oil tank. A judgment for $4,000 was recovered by the plaintiffs, and the defendant has appealed. Of the various exceptions reserved we are requested by the appellant to review only those which, if sustained, would result in a reversal without a new trial.

The declaration alleged that the decedent, while employed by the defendant to assist in driving rivets in the course of

the described construction, was required to work upon a certain platform, erected by the defendant for that purpose, consisting of uprights, braces and cross-pieces so built that boards could be placed at different elevations for carrying on the work; that it was the duty of the defendant to provide the decedent a reasonably safe place in which to work, and to so construct the platform in question as not to subject him to unnecessary risk; but that the platform was improperly and negligently built by the defendant with defective and inadequate materials and without proper fastenings, and that in consequence thereof it collapsed and caused the death on account of which the suit was brought. It is averred that the insecure condition of the scaffold was not apparent to the workman and that he was using due care.

The proof shows that the tank was being erected in five foot tiers, and that as each was completed the platform upon which the riveters stood had to be elevated a sufficient distance to enable them to place another tier in position. At the time of the accident the structure had reached the height of about thirty feet. The platform extended entirely around the inside of the tank. It was supported by brackets each of which was fastened to a single four by four inch wooden upright which rested on the ground. The uprights stood at intervals of about fourteen feet around the tank and at a distance of slightly more then three feet from its inner surface. They were held in place by a system of braces. The brackets each consisted of two boards joined at one end and nailed against the upright in such position as to form an inverted right angled triangle. These boards were one inch thick. The horizontal piece, known as the "ledger board," was eight inches wide and about three feet long. It projected from the upright to within a few inches of the wall of the tank. The other bracket board, called the "brace," was six inches wide and of a length sufficient to reach diagonally from the end of the ledger board to a point about two and a half feet lower down on the upright. Upon the brackets were laid the platform boards. The scaffold thus

constructed was required to accommodate not only the workmen engaged in riveting the sections of the tank, but also a hand forge, fuel and other material for each group. It was while a forge was being moved in the usual way from a lower to a higher platform that one of the brackets gave way and James Smith received his fatal injury.

The bracket when examined immediately after the accident was found to contain the nails which had fastened it to the upright. There were five of these in the ledger board and possibly one or two more than that number in the brace. None appear to have been left in the upright, and as that remained in position, it is clear that the collapse of the platform was due to the fact that the nails had not sufficient hold in the upright to bear the strain to which they were subjected. According to the evidence offered on behalf of the defendant the nails used in the supports were of the size known as "ten penny," and protruded about one and three-fourths inches through the ledger boards and braces. One of the plaintiff's witnesses, who examined the bracket in question, testified that the rails were "eight pennies," and had a projection of about *one and a half* inches beyond the thickness of the boards. There was testimony to the effect that it was customary in the construction of this kind of scaffolding to use twenty penny nails in fastening the brackets to the uprights. The nails and other materials for the scaffold were furnished by the defendant corporation. The bracket frames were brought to the work already joined and prepared for attachment to the uprights as required. One of the men was specially charged with the duty of building the scaffold and re-adjusting the platforms as the erection of the tank progressed. He was assisted by two other employees assigned to this duty, but when not so engaged they all worked on the tank. The remaining workmen, including the decedent, had no part in the construction of the scaffolding. It was designed by the defendants superintendent and was inspected by him from time to time as it was in course of erection and in use. It was testified on behalf of the

defendant that the bracket which parted from the upright was constructed in accordance with the design, and fastened with nails of the size and number, usually applied by the defendant in such work, that the platforms thus supported were capable of bearing a much heavier strain than that under which the bracket in this instance gave way, and that they had always theretofore proved to be entirely adequate and secure. But on the other hand, as already recited, there was proof tending to show that the nails provided by the defendant for the construction of this particular platform were not as long as those it had been in the habit of using, or as those customarily used elsewhere, for such purposes; and the specific cause of the accident is conceded to have been the pulling out of the nails from the support to which the bracket was attached.

From this statement of what we regard as the essential features of the case it is plain that the issue involved could not properly have been withdrawn from the jury. It is evident that the bracket which collapsed was not securely nailed to its support, and the plaintiff's proof admits of the inference that the defendant did not use due care in providing nails of sufficient length. There can be no question that for such a neglect, if found to have occurred, the defendant is liable. Its undoubted duty was to furnish its employees safe appliances for the work in which they were engaged, and this duty could not be delegated. *Young Co.* v. *Kabat,* 117 Md. 251; *Frizzell* v. *Sullivan,* 117 Md. 392; *Pennsylvania Steel Co.* v. *Nace,* 113 Md. 483; *Hamelin* v. *Malster,* 57 Md. 308. The doctrines relating to fellow-service and assumption of risk, presented in the prayers, are not applicable to the conditions here disclosed. The materials used in the scaffolding were supplied exclusively by the defendant, and there was no obvious danger to which the workmen were exposed in occupying the platform which proved to be defective. *Dettering* v. *Levy,* 114 Md. 283. Even the employees who erected the scaffold and nothing to

do with the selection of the fastenings, and the record suggests no reason for misgiving on their part as to a possible inadequacy in the size of the nails furnished for the supports. There was an implied assurance as to their sufficiency and as to the safety of the platform not only from the fact that the materials had been specifically provided for the purpose by the defendant, but also from the supervision and inspection maintained by its superintendent, to whom it had given control and direction of the entire work. The appellant is, therefore, not entitled to be relieved of liability, upon the theory that any negligence in the premises must have been that of a fellow-servant of the decedent, or that he must be held to have assumed the risk of injury from working upon an apparently secure, but actually unsafe, platform.

In the view we take of the case it is not necessary to discuss the question, raised in argument, as to whether the scaffolding was a "place" of work within the rule requiring the master to furnish a safe place for the performance of the servant's duties, or whether it was merely an appliance which the employees themselves were to adjust in the progress of the work and for the failure to make safe use of which they might be alone responsible. The neglect charged here, upon the evidence to which we have referred, was in reference to the duty of the defendant to furnish suitable *materials* for the scaffold, and this duty would be the same whether the structure be regarded as a place or as an appliance for the work.

The prayers which proposed that a verdict be directed for the defendant were properly overruled.

*Judgment affirmed, with costs.*