Leon KRANIG, Plaintiff-Appellant,

v.

Marvin RICHER, Defendant-Respondent.

Supreme Court

*No. 77–445. Submitted on briefs February 7, 1980.—*
*Decided September 30, 1980.*
(Also reported in 297 N.W.2d 26.)

For the appellant the cause was submitted on the brief of *Michael I. Tarnoff* and *Warshafsky, Rotter & Tarnoff, S. C.,* of Milwaukee.

For the respondent the cause was submitted on the brief of *L. William Staudenmaier* and *Cook & Franke, S. C.,* of Milwaukee.

PER CURIAM. This is an appeal from a judgment of the Circuit Court for Milwaukee County pursuant to an order granting summary judgment to the defendant.

This is a third-party common law negligence action by an employee, Leon Kranig, claiming the right of recovery against an alleged co-employee, Marvin Richer. Richer answered the complaint, alleging that he was the president of the corporation which employed Kranig, that at the time of the alleged negligence he was acting in his capacity as president of the employer corporation, that he was not a co-employee, and that the suit was barred by the provisions of the worker's compensation act, which limits liability of an employer exclusively to worker's compensation.

Defendant brought his motion for summary judgment based on pleadings and affidavits filed in the action. The only question posed on this appeal, and the controlling question in the trial court, was whether the undisputed material facts demonstrated that Richer was acting in his capacity as president of the corporation, the *alter ego* of the employer, or whether he was in the separate capacity of a co-employee and, hence, subject to liability for negligence.

The facts revealed in the pleadings and affidavits show that on January 4, 1975, the plaintiff, Leon Kranig, was injured in an accident when a die casting machine malfunctioned while the plaintiff was working at Acro Industries, Inc., in Waukesha. As a result of the accident, the plaintiff sustained a total loss of the vision of his left eye.

Prior to the accident, the defendant, Marvin Richer, had purchased the assets of an existing corporation and formed the new corporation called Acro Industries. The defendant was president and treasurer of the new corporation. The plaintiff was hired by the defendant to work for the corporation in December of 1974, and was spe-

cifically hired to operate the die casting machine turning out zinc castings. The plaintiff had worked for the corporation only eight to twelve hours in December of 1974. During that time, the plaintiff was personally instructed by the defendant on how to operate the machine.

For six months prior to that date of the accident, all the repairs and maintenance on the machine were done by the defendant personally. The plaintiff did none of the repairs or maintenance on the machine. On the workday immediately preceding the accident, the defendant allegedly disassembled the machine in an attempt to correct a maladjustment. The plaintiff saw that the machine was very old and that a lot of the connections and mechanisms were worn and sloppy in their functioning. The plaintiff admitted that he did not know specifically what the defendant had done in the repair and maintenance of the machine or what caused it to malfunction, because the plaintiff was not an expert on the machine.

On the day of the accident, the defendant did not participate in the actual operation of the machine, but was present during the start-up period because he felt that the plaintiff had insufficient training to operate the machine alone. The plaintiff had been instructed to wear safety glasses when the machine was operable, *i.e.*, when the hydraulic button had been pushed. He had been told by the defendant that it was not necessary to wear safety glasses until the hydraulic button had been activated. On the day of the accident, the plaintiff did not have his safety glasses on because the hydraulic button had not been pushed. The plaintiff had also observed that the defendant did not wear safety glasses up until the moment that the hydraulic button was pushed.

Immediately prior to the accident, the defendant was standing only a foot or foot and one-half away from the plaintiff. The defendant was watching the machine and was not wearing safety glasses. The plaintiff testified

he was using the defendant as an example and he was not wearing safety glasses.

While they were observing the machine and contemplating unplugging the "sprule hole," the plaintiff waited for directions from the defendant, whom he considered the "boss." As both men were standing near the machine, a shot of molten zinc came out of the sprule hole and struck the plaintiff in the eye.

Richer testified that, before anyone has any contact with the machine, one should wear safety glasses and that it was his practice to wear safety glasses when the machine was in the warmup phase and, in fact, at any time he was in the vicinity when any movement of any kind was going on. Although the defendant saw that the plaintiff did not have safety glasses on, the defendant did not tell him to put such glasses on at any time before the accident occurred.

On the defendant's motion for summary judgment, the trial court held that the plaintiff had no cause of action based on common law negligence against the defendant as a co-employee and that the plaintiff's exclusive remedy was the worker's compensation act. Judgment was entered dismissing the plaintiff's complaint. This appeal followed.

On appeal plaintiff contends that the facts undisputably show:

". . . that Richer personally instructed Kranig on how to operate the machine in question and as to when Kranig should wear safety glasses. . . . that Richer was assisting Kranig in getting the machine from the warmup to the operating phase at the precise time that the accident occurred. . . . all of the repairs and maintenance to the machine were done by Richer personally."

He also asserts that:

"There is a dispute as to whether Richer personally disassembled the machine on the work day immediately preceding the date of the accident."

He apparently contends that existence of this disputed fact would in itself defeat the motion for summary judgment. Whether this fact is disputed or not we consider irrelevant, because assuming that the allegation is true, it does not have any tendency to prove that Richer was a co-employee and not acting in his capacity as president of the corporation performing duties on behalf of the employer.

This case is governed by the rationale of *Gerger v. Campbell,* 98 Wis.2d 282, 297 N.W.2d 183 (1980), of even date herewith, and the line of cases upon which *Gerger* is based. We have repeatedly held that, when officers or supervisory employees act in the capacity of supervising other workers or in their capacity to furnish or maintain a place of work or to furnish tools or machinery, they act not as co-employees but as agents for the employer. When so acting, they are clothed with the immunity that inures to the employer as being exclusively liable only under the compensation act.

Here it is clear that Richer acted in the performance of his nondelegable duty to supervise the employee Kranig and in the performance of a nondelegable duty of the employer to furnish tools and equipment to employees. The fact that he may have acted negligently or affirmatively in a way that increased the risk of harm to Kranig is insufficient to make him personally liable. The affirmative risk-causing acts which would impose liability must be performed in a capacity other than in the performance of a nondelegable duty on behalf of the employer. *See, Crawford v. Dickman,* 72 Wis.2d 151, 155, 240 N.W.2d 165 (1976). The breach of duty must occur in the performance of personal—not employer's—duties owed another employee.

Acknowledging as we do that the facts, arguably at least, show direct and affirmative negligent conduct, we

nevertheless conclude, consistent with the decisions cited herein, and in *Gerger, supra,* that the trial court correctly concluded as a matter of law that "Richer [had] not gone over and above his duty that he owed to the corporation."