DANAHY, Chief Judge.
We determine in this case whether, under the circumstances established by the evidence, corporate officers and supervisors are liable as co-employees for dam *1028 ages sustained by an injured employee. The appellants, the plaintiffs in this personal injury suit, appeal an order entering judgment for the appellees, the defendants, on the appellees’ motions for directed verdict notwithstanding a jury’s verdict in the appellants’ favor for damages totaling $250,000 after adjustment for comparative negligence. We affirm.
The appellants brought this suit to recover damages for serious injuries sustained by the appellant, Dale Raulerson, on April 17, 1978, while working with the individual appellees (Donald R. Roehr, Ronald Roehr, and Thomas Roehr) to push steel pins out of the crawler tracks of a tractor. The appellants acknowledged that the appellees were officers and supervisors of Dale Rau-lerson’s employer, Roehr’s Machine Shop, Inc., but asserted that they were acting as co-employees of Dale Raulerson in the pin-pushing operation, and were guilty of affirmative acts of negligence which went beyond the scope of the nondelegable duty of the employer to provide its employees with a safe place to work.[1]
The appellees asserted as an affirmative defense the exclusive remedy provisions of the Worker’s Compensation Law, chapter 440, Florida Statutes (1977). Roehr’s Machine Shop, Inc., provided worker’s compensation coverage to Dale Raulerson. The accident, however, occurred prior to the amendment of chapter 440 which granted statutory immunization to employees who negligently injure their co-employees. § 440.11(1), Fla.Stat. (1978). In answer to a special interrogatory, the jury specifically found that each of the individual appellees committed “an affirmative act of negligence ... which was beyond the scope of his supervisory obligation to accomplish the employer's nondelegable duty of providing its employees a safe place to work and was a legal cause of damage to [the appellants].”
After the jury was excused, the trial judge announced that he was granting the appellees’ motions for directed verdict, upon which the trial judge had earlier reserved ruling, on the grounds that “no proper view of the evidence could legally sustain the position of the plaintiffs; that the defendants were not guilty of any affirmative acts of negligence which went beyond the scope of their supervisory attempt to accomplish the employer’s duty of providing a safe place to work.” Final judgment for the appellees was entered on the directed verdicts. For purposes of this appeal, we view the facts shown by the evidence in the light most favorable to the appellants, as the parties against whom verdicts were directed.
Dale Raulerson was a skilled welder by training when he started to work at Roehr’s Machine Shop, Inc. He was hired to weld and he functioned primarily as a welder in the shop. Roehr’s Machine Shop was incorporated, and the corporation employed the appellees as well as Dale Rau-lerson. Dale considered all three individual appellees to be his “supervisors and bosses” at the shop; but Thomas Roehr actually took over the shop in 1971 following Donald Roehr’s heart attack, and he was the person “in charge of the shop” on the day Dale Raulerson was injured.
On the date in question, Dale Raulerson was working directly with Ronald Roehr and Donald Roehr on the repair of a customer’s tracked vehicle. Dale took the wheels off the tracked machine and set them on a table in the bay where he usually worked. Donald Roehr told Dale that the pins had to come out of the wheels first, and to take them around front and press out the pins. When Dale arrived at the power press on the front side of the shop, Ronald Roehr and his helper, Dennis Daubert, were working at the power press frame, pressing pins out of some small *1029 rollers, or idlers. Dale Raulerson told Ronald Roehr that Donald Roehr wanted Dale to get the pins out of the big idlers, before welding on them. Ronald Roehr told Dale to go ahead and take over pushing out the pins from the rollers he was working on.
Before he left, Ronald Roehr instructed Dale to watch the gauge on the pump attached to the bottom of the power unit on the press, which was a homemade device by the appellees, and not to take the machine up to too much pressure, because the old hydraulic hose might blow. The pressure gauge had a red space on it labeled “danger zone.” Ronald Roehr also told Dale that Dennis Daubert would get him a piece of steel to use in pressing the pins out of the idlers.
Ronald Roehr knew that there was a possibility that things would fly out of the power press if it were used incorrectly. Except for the instruction to watch the gauge and to not take the machine up to too much pressure because of the old hydraulic hose, Ronald Roehr never gave Dale instructions on how to use the power press as a complete unit. Ronald Roehr knew that Dale had never operated the machine by himself. Donald Roehr had seen pieces of steel in the press bend and pop out before.
While Dale Raulerson pushed the pins out the rollers that Ronald had been working on, Dennis Daubert returned with a piece of steel that Ronald Roehr said Dale was to use in pressing the pins out of the idler. Dale placed the idler in the press and started to work on it. He was using a blowtorch known as a rosebud to heat the hub of the idler (to expand it so the pins could be pressed out) and kneeling or squatting on the ground with his head down to watch the pressure gauge, pursuant to Ronald Roehr’s instructions, so he would not blow the hose off. He applied pressure, and that is the last thing Dale remembered about the accident.
It was undisputed that when Dale applied pressure with the hydraulic ram to the 1¾ inch by 8 or 9 inch steel piece which Dennis Daubert had provided, pursuant to Ronald Roehr’s instructions, to use in pressing the pin out of the idler, the steel piece bent under the pressure and flew out of the power press, striking Dale on his head as he knelt on the ground and looked down at the gauge. Because Dale was looking at the gauge, not the steel rod under pressure, he never saw the rod bend into an “S” shape before it flew out of the press. Expert testimony at trial indicated that as constructed by the appellees and utilized by Dale Raulerson, using the 8 or 9 inch steel piece, the power press was somewhat like a shotgun without a barrel, due to the energy buildup and tendency of the longer piece of steel to stick out in any direction.
Dale Raulerson was severely and permanently injured.
In West v. Jessop, 339 So.2d 1136 (Fla. 2d DCA 1976), this court considered the question whether an employee of a corporation, who suffers an injury as a result of the negligence of an officer of the corporation during working hours, can maintain an action against the officer even though the employee is covered by the Worker’s Compensation Law. We pointed out that the Worker’s Compensation Statute precluded a suit against the corporate employer. On the other hand, under the law at that time, co-employees were subject to third party actions for negligent acts during the course of employment. We adopted the rule that a corporate officer becomes amenable to suit as a co-employee when he commits an affirmative act of negligence which goes beyond the scope of the nondelegable duty of the employer to provide his employees with a safe place to work.
In the Jessop case, the employee had complained of a headache. In an attempt to relieve her pain, the corporate officer wrenched her neck, causing permanent injury. We held that the act of negligence charged against the corporate officer was clearly one of affirmative action on his part, and that the facts unquestionably placed him in the category of a co-employee. Therefore, he was not entitled to the cloak of immunity provided by the Worker’s Compensation Statute.
*1030 We considered the same question again in Chorak v. Naughton, 409 So.2d 35 (Fla. 2d DCA 1982). In that case, the corporate officer administered a paddling to an employee as part of a sales contest. He hit the employee so hard that he broke the paddle in half. Several witnesses stated that they could see the employee experience extreme pain. The employee brought suit against the corporate officer individually for damages sustained. This court agreed that the employee’s recovery of worker’s compensation benefits from the corporate employer did not preclude him from proceeding against the officer individually. We repeated the rule that a corporate officer becomes amenable to suit as a co-employee when he has committed an affirmative act of negligence beyond the scope of the nondelegable duty of the employer to provide his employees with a safe place to work.
The rule we adopted in Jessop was derived from a rule adopted by the Supreme Court of Wisconsin in Kruse v. Schieve, 61 Wis.2d 421, 213 N.W.2d 64 (1973). In commenting on a supervisor’s liability to an employee, the Wisconsin court said:
Under what circumstances can a duty be owed to a fellow employee additional to and different from the duty of proper supervision that is owed to the employer by a corporate officer or supervisor/employee? Clearly something extra is needed over and beyond the duty owed the employer.
Id. 213 N.W.2d at 67 (emphasis supplied).
We emphasized this language in Zurich Insurance Co. v. Scofi, 366 So.2d 1193 (Fla. 2d DCA 1979), which involved the death of an employee working in a trench when a cave-in occurred. Damages were sought from the supervisor employed by the same company which employed the deceased worker. The supervisor was in charge at the job site. We found that there was nothing in the record of that case to indicate that the supervisor committed any affirmative act of negligence which went beyond the scope of his employer’s duty to provide a safe place to work. We said “simply stated, the ‘something extra’ as required by Kruse was missing in the instant case.”
Similarly, we find the “something extra” missing in the case now before us. We believe the trial judge was correct in ruling that the evidence presented at trial simply does not sustain a finding that the individual appellees were guilty of affirmative acts of negligence which went beyond the failure to perform the nondelegable duty of Roehr’s Machine Shop, Inc., to provide Dale Raulerson with a safe place to work.
For the foregoing reasons, we affirm.
CAMPBELL and FRANK, JJ., concur.

. The trial judge refused to instruct the jury on gross negligence and the appellants do not assert on this appeal that the judge’s ruling was error. This appeal does not involve issues of gross negligence or willful and wanton misconduct on the part of the appellees. Therefore, we do not believe that the recent decision of our supreme court in Streeter v. Sullivan, 509 So.2d 268 (Fla.1987), casts doubt on the result which we reach here. In that case the supreme court dealt specifically with allegations of gross negligence and willful and wanton misconduct by corporate officers.