650 A.2d 274

Ronald W. HASTINGS and Marsha C. Hastings

v.

Steven MECHALSKE.

No. 9, Sept. Term, 1994.

Court of Appeals of Maryland.

Dec. 9, 1994.

Edward C. Mackie (Glenn W. Trimmer, Rollins, Smalkin, Richards & Mackie, all on brief), Baltimore, for petitioners.

John R. Penhallegon (Brian S. Jablon, Smith, Somerville & Case, all on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

BELL, Judge.

We granted certiorari to consider when a supervisory coemployee may avoid liability to an injured employee under the Workers' Compensation Act ("the Act"), Maryland Code (1957, 1985 Repl.Vol.) Article 101, §§ 1 to 102.[1] Specifically, we are asked whether the respondent, Steven L. Mechalske, the supervising foreman on the worksite, is entitled, by virtue of section 58 of the Act, to the immunity of the supervisory coemployee and, thus, may avoid liability to the petitioner, Ronald Hastings,[2] a worker at the site, who was injured by another worker on the site acting pursuant to the respondent's instructions. In an unreported opinion, the Court of Special Appeals held that the respondent was so entitled. We shall affirm.

## I.

In early 1990, William H. Knott, Inc. (Knott), a general contractor, began work under a construction contract to build

---

1. By Ch. 8, Acts of 1991, the Workers' Compensation Act was recodified at Maryland Code (1991) §§ 9–101 to 9–1201 of the Labor and Employment Article. Unless otherwise indicated, all future statutory references are to Article 101, which was in effect when this case was tried.

2. Marsha Hastings, the petitioner's wife, joined in the suit with respect to the loss of consortium count.

a loading dock and modify structures at the Point Breeze Business Center in Baltimore County. One of its employees, Craig Allen, was project manager. The respondent, also a Knott employee, was assigned as the foreman superintendent of the project. As project manager, Allen was responsible for: negotiating contracts with the subcontractors, ensuring that the project progressed on time, and within its budget, and supervising the foreman on the job. As the foreman, the respondent supervised the day-to-day activities of the project, including hiring and firing temporary employees and renting equipment needed for the job.

One of the subcontractors on the job was Glen Arm, by whom the petitioner was employed. Its contract was to complete exterior brickwork, the task in which the petitioner was engaged when injured. In addition to subcontractors, Knott used temporary employees, hired through Labor World U.S.A., Inc., a temporary labor broker. Labor World neither supervised nor instructed the laborers it supplied for the Point Breeze Project.

On April 26, 1990, the respondent assigned two temporary workers to break up old concrete in an electrical pit. At first, the temporary workers were instructed to use jack hammers. When this proved unsatisfactory, the respondent, after consultation with Allen, rented a backhoe, equipped with a hoe-ram. On the morning of April 27, the respondent began using the backhoe to break up the pit. The petitioner was on scaffolding a short distance away, laying bricks. Subsequently, the respondent assigned one of the temporary laborers, Robert H. Wilkinson, to operate the backhoe. The evidence showed Wilkinson had little experience using a backhoe of this type and that his last use of any kind of backhoe was nearly a decade earlier. Although the respondent observed Wilkinson operating the backhoe with its "outriggers" or "stabilizer arms" down, he never saw him drive or move the equipment. Thereafter, Wilkinson operated the backhoe for about two hours, moving it at one point to within two or three feet of the scaffold on which the petitioner was working. When Wilkinson attempted once again to move the backhoe, for disputed

reasons,[3] the front bucket of the backhoe hit the scaffold. The petitioner was knocked twenty-five to thirty feet to the ground and injured.

The petitioner brought suit against Knott,[4] the respondent, Robert H. Wilkinson, Labor World, U.S.A., Inc. (Wilkinson's employer), and ABC Rental, Inc. (the backhoe supplier). Knott filed a motion for summary judgment, which was granted. Moreover, at the end of the petitioner's case, motions for judgment were granted as to all defendants except Wilkinson, against whom judgment was rendered in favor of the petitioner by default. The theory underlying the count against the respondent was negligent entrustment of the backhoe to Wilkinson. At the close of plaintiff's case, the respondent filed, and the trial judge granted, the respondent's motion for judgment.

## II.

The petitioner argues that the respondent is not entitled to the immunity of a supervisory coemployee. He asserts that, while managing and supervising, pursuant to a delegation of authority, the affairs of his employer, the respondent committed against him the affirmative and direct act of negligently delivering to Wilkinson's possession and control a dangerous instrumentality, which he knew, or should have known, Wilkinson was not competent to operate safely. Thus, he says, the respondent breached a personal duty owed to the petitioner,

---

3. At trial, Wilkinson testified that the backhoe hit the scaffolding because the equipment "went out of control" due to problems with the seat and brake. Likewise, the respondent testified that when he was operating the backhoe, the seat got stuck and the brake slipped a couple of inches. The trial court held, however, that the backhoe was not defective as alleged nor the proximate cause of the accident, the accident having been caused by the negligence of Wilkinson.

4. Knott, it was alleged, was liable to the petitioner because it was Wilkinson's employer. As the principal contractor of the project, however, Knott was considered to be the "statutory employer," see § 62, of Wilkinson and, as such, was entitled to the immunity of an employer under the Act.

over and above any duty that may have been owed to his employer. The petitioner maintains that, because the respondent clearly breached the duty that one coemployee owes to another, he cannot escape liability simply because he may have also breached a duty owed to his employer, namely, his obligation as a supervisor to fulfill the latter's duty to provide a safe workplace.

Furthermore, the petitioner points out that, since he was employed by Glen Arm and the respondent by Knott, the respondent is not the petitioner's actual supervisor. Reasoning that, under *Athas v. Hill*, 300 Md. 133, 476 A.2d 710 (1984), employer immunity extends only to supervisory coemployees of the employer of the injured employee—the supervisory coemployee and the injured employee must be employed by the *same* employer—and that Knott was not the petitioner's employer, he posits that the respondent, even if entitled to his employer's immunity, cannot escape liability to the petitioner.

The respondent sees it differently. Regardless of the factual merits of the negligent entrustment claim, he asserts that all of his actions were undertaken as supervisor on behalf of his employer; therefore, the respondent urges that he enjoys the same immunity from civil liability as his employer. Moreover, relying on *Athas*, the respondent maintains that the correct analysis is whether the respondent has acted as a supervisor or mere coemployee, not whether he has committed an affirmative or direct act of negligence. Additionally, the respondent contends that, where his employer is, as Knott was, the statutory employer, *see* § 62,[5] the determination whether a supervisor has immunity depends not on the conduct of the supervision, *i.e.*, was the supervisor acting on behalf of the immunized employer.

---

**5.** Section 62(a) provides, in pertinent part, "... where compensation is claimed from or proceedings are taken against the principal contractor, then, in the application of this article, reference to the principal contractor shall be substituted for reference to the employer...."

## III.

The Maryland Workers' Compensation Act "embodies a comprehensive scheme to withdraw all phases of extrahazardous employments from private controversy and to provide sure and certain relief for injured workmen, their families and dependents regardless of questions of fault." *Athas v. Hill,* 54 Md.App. 293, 297, 458 A.2d 859, 862 (1983) (citing *Continental Casualty Co. v. Mirabile,* 52 Md.App. 387, 395, 449 A.2d 1176, 1181, *cert. denied,* 294 Md. 652 (1982)), *aff'd,* 300 Md. 133, 476 A.2d 710 (1984). The Act, in other words, provides employees, and their dependents, with the right to compensation from their employer as their exclusive remedy against the employer. *See* § 15.[6] *See also, e.g., South Down Liquors, Inc. v. Hayes,* 323 Md. 4, 11, 590 A.2d 161, 164 (1991); *Hauch v. Connor,* 295 Md. 120, 127, 453 A.2d 1207, 1211 (1983); *Wood v. Aetna Cas. & Sur. Co.,* 260 Md. 651, 660–61, 273 A.2d 125, 131 (1971); *American Radiator & Standard Sanitary Corp. v. Mark Engineering Co.,* 230 Md. 584, 590, 187 A.2d 864, 867 (1963); *Cox v. Sandler's, Inc.,* 209 Md. 193, 198–99, 120 A.2d 674, 677 (1956); *Baltimore Transit Co. v. State,* 183 Md. 674, 677, 39 A.2d 858, 859 (1944); *Barrett v. Indemnity Ins. Co.,* 152 Md. 253, 259, 136 A. 542, 544 (1927); *Hagerstown v. Schreiner,* 135 Md. 650, 653, 109 A. 464, 465 (1920).

Where a person other than the employer is liable for an employee's death or injuries, for which compensation is payable, the employee may file a claim for compensation against the employer or bring an action for damages against the liable third party. *See* § 58. *See also Gray v. State Rds.*

---

6. Section 15 provides, in pertinent part:

Every employer subject to the provisions of this article, shall pay or provide as required herein compensation according to the schedules of this article for the disability or death of his employee resulting from an accidental personal injury sustained by the employee arising out of and in the course of his employment without regard to fault as a cause of such injury. . . .

The liability prescribed by the last preceding paragraph shall be exclusive. . . .

*Comm'n,* 253 Md. 421, 424–25, 252 A.2d 810, 812 (1969); *Baltimore Transit Co. v. Worth,* 188 Md. 119, 141, 52 A.2d 249, 259–60 (1947); *Hagerstown, supra,* 135 Md. at 655, 109 A. at 465. *Brocker Mfg. & Supply Co. v. Mashburn,* 17 Md.App. 327, 332–33, 301 A.2d 501, 504 (1973). In the case of the former, the employee is limited to worker's compensation as his or her exclusive remedy against that employer. On the other hand, the employee who seeks to obtain relief over and above worker's compensation may do so by choosing the latter course; he or she could bring suit against the liable third party, even one who is a coemployee of the injured party. In that event, proof that the defendant is a third party tort-feasor, who was not acting on behalf of the employer, will preclude a finding that the defendant is immune from suit. *Leonard v. Sav–A–Stop Servs.,* 289 Md. 204, 208, 424 A.2d 336, 337 (1981); *Hutzell v. Boyer,* 252 Md. 227, 232, 249 A.2d 449, 452 (1969); *Connor v. Hauch,* 50 Md.App. 217, 222, 437 A.2d 661, 664 (1981), *aff'd,* 295 Md. 120, 121, 453 A.2d 1207, 1208 (1983).

In *Athas v. Hill,* 300 Md. 133, 134, 476 A.2d 710, 710–11 (1984), we considered "whether . . . Article 101, § 58 authorizes an employee to sue a supervisory coemployee for negligently discharging the employer's duty to provide a safe place to work." We concluded that "supervisory coemployees may be subject to liability only for negligently breaching a duty of care which they personally owe to the employee." *Id.* Stated differently, we held that a supervisory coemployee performing a nondelegable duty of the employer—such as providing a safe place to work—does not thereby assume a personal duty toward his or her fellow employees. *Id.* at 148, 476 A.2d at 718. Such an employee is entitled to the benefit of the employer's immunity, even though he or she negligently performed the employer's duty. We recognized, on the other hand, that "if a supervisory employee commits an affirmative, direct act of negligence toward an employee, and therefore negligently breaches a personal duty of care which is reasonably owed by him to the fellow employee, then he would not be immunized from liability." *Id.* at 149, 476 A.2d at 718.

The facts of *Athas* are instructive in determining the applicability of its teachings to the case *sub judice*. There, a restaurant employee, Nicholas Athas, brought suit against three supervisors of the country club by which they all were employed. Athas suffered permanent disability and facial disfigurement as a result of being attacked with a butcher knife by another fellow employee, a chef, of the country club. He alleged that the supervisors knew or should have known of the chef's violent propensities, yet failed to warn, or otherwise protect him from the danger. The supervisors conceded that they had negligently discharged their duty to exercise care in hiring and retaining competent, nonviolent employees.

The three supervisors in *Athas* held the positions of managing ·agent/president, vice-president, and House Chairman. Their responsibilities included "the supervisory and immediate duties of personnel management and direction," as well as hiring, discharging and otherwise directing the activities of the employees. *Id.* at 135, 476 A.2d at 711. As such, they were responsible for discharging their employer's duty to provide a safe place to work. It was in consideration of the abovementioned facts that we determined that the supervisors qualified for employer immunity under the Act.

To reach that result, we adopted the "Wisconsin approach" to employer immunity.[7] Under that approach,

---

7. We considered, but rejected two other approaches. The first, the majority view, broadly holds that all coemployees are immune from suit because workers' compensation statutes provide an injured worker with his or her exclusive remedy, *see, e.g., Ferreira v. Pisaturo*, 215 Conn. 55, 573 A.2d 1216, 1217 (1990); *Beyers v. Roll*, 476 P.2d 271, 272 (Colo.Ct. App.1970); *Fregeau v. Gillespie*, 96 Ill.2d 479, 71 Ill.Dec. 716, 718, 451 N.E.2d 870, 872 (1983), the third party provisions being intended to encompass only those who are outsiders to the employment relationship. *See Athas*, 300 Md. at 141, 476 A.2d at 714. *See also, e.g., Miller v. Scott*, 339 S.W.2d 941, 944 (Ky.1960) (term "some other person" in third party provision "refers to a third person having no connection with the general work being performed and whose act of negligence was wholly disconnected with that work."); *Brown v. Estess*, 374 So.2d 241, 242 (Miss.1979) (corporate officer immune from common law action given purpose of workmen's compensation act to make compensation employee's exclusive remedy where injury sustained during the

a corporate officer or supervisory coemployee is subject to liability for negligence if he breaches a duty of care which he personally owed to the plaintiff. The negligence must have been directed toward the particular plaintiff and the tortious act must have been outside the scope of the employer's responsibility. The coemployee is not liable merely for breaching a duty that the employer owed the injured employee.

*Athas*, 300 Md. at 143–43, 476 A.2d at 715. *See also Kruse v. Schieve*, 61 Wis.2d 421, 213 N.W.2d 64, 67 (1973) ("Liability of a corporate officer in a third-party action must derive from acts done by such officer in the capacity of a coemployee, and may not be predicated upon acts done by such officer in his capacity as corporate officer."); *Laffin v. Chemical Supply Co.*, 77 Wis.2d 353, 253 N.W.2d 51, 53 (1977) ("When an officer or supervisor fails to perform the employer's duty, the failure is that of the employer, not the officer or supervisor").

The rationale [for] this view "is that worker's compensation is the exclusive remedy against an employer, and if there is a failure of an officer or employee to perform a duty owed to the employer, the employee's recourse is solely against the employer. When an officer or supervisor fails to perform the employer's duty, the failure is that of the employer, not the officer or supervisor."

*Athas*, 300 Md. at 144, 476 A.2d at 716 (quoting *Laffin v. Chemical Supply Co.*, 77 Wis.2d 353, 253 N.W.2d 51, 53 (1977)).

---

course of employment); *Warner v. Leder*, 234 N.C. 727, 69 S.E.2d 6, 9–10 (1952) (employee's acceptance of benefits under Workmen's Compensation Act forecloses his or her right to maintain common law tort action against not only the employer, but also those conducting the employer's business).

Under the second approach, the third party provisions are construed literally; hence, "because a coemployee cannot be an employer, he is subject to liability." *Athas*, 300 Md. at 142, 476 A.2d at 715. *See, e.g., Rehn v. Bingaman*, 151 Neb. 196, 36 N.W.2d 856, 859, *appeal dismissed*, 338 U.S. 806, 70 S.Ct. 79, 94 L.Ed. 488 (1949); *Gee v. Horvath*, 169 Ohio St. 14, 157 N.E.2d 354, 356 (1959); *Colarusso v. Mills*, 99 R.I. 409, 208 A.2d 381, 386 (1965).

*Athas* thus makes clear that a supervisor's negligence in the performance of his or her supervisory duties is not enough to subject him or her to personal liability. Only if the supervisor directs a negligent act toward a particular fellow employee will the supervisor be held personally liable. Thus, in order for a supervisory coemployee to avoid liability under the Act, at the time of the accident, the supervisor must be: (1) performing a nondelegable duty of the employer; and (2) acting within the course of his or her employment.

We consider first the requirement that the coemployee be performing a nondelegable duty of the employer. A nondelegable duty is a duty which the employer is "primarily and absolutely obliged" to perform properly. *See Wood v. Abell,* 268 Md. 214, 238–39, 300 A.2d 665, 677 (1973) (quoting *F. Jarka Co. v. Gancl,* 149 Md. 425, 431, 131 A. 754, 756 (1926)). As we explained in *Rowley v. City of Baltimore,* 305 Md. 456, 466, 505 A.2d 494, 499 (1986), and again in *Brady v. Ralph M. Parsons Co.,* 327 Md. 275, 285, 609 A.2d 297, 302 (1992), the term "nondelegable" is "something of a misnomer, as the [employer] is free to delegate the duty of performance to another, but he cannot thereby avoid or delegate the risk of non-performance of the duty." In other words, the employer remains liable with respect to the duty, regardless of the acts or omissions of the person entrusted to perform it. *See Brady v. Parsons Co., supra,* at 302–02, 609 A.2d 297. *See also Security C. & L. Co. v. Bowers,* 124 Md. 11, 16, 91 A. 834, 835–36 (1914); *Barlett–Hayward Co. v. State,* 120 Md. 1, 5–6, 87 A. 499, 500 (1913); *Penn. Steel Co. v. Nace,* 113 Md. 460, 484–85, 77 A. 1121, 1132–33 (1910); *State ex rel. Hamelin v. Malster,* 57 Md. 287, 308 (1881).

Under the Act, an employer has the nondelegable duty to "provide each employee of the employer with employment and a place of employment that are: (1) safe and healthful; and (2) free from each recognized hazard that is causing or likely to cause death or serious physical harm to

the employee." [8] The duty to provide a safe place to work includes other duties. For example, in *Ramey v. Martin–Baker Aircraft Co. Ltd.*, 874 F.2d 946, 952 (4th Cir.1989), *reh'g denied*, (June 6, 1989), the court, citing *Athas*, concluded that "routine work assignments and supervision are aspects of the nondelegable duty of providing employees a safe place to work." *See also Athas*, 300 Md. at 148, 476 A.2d at 718 (retain competent, nonviolent employees); *Chesapeake Stevedoring Co. v. Hufnagel*, 120 Md. 53, 60, 87 A. 4, 6 (1913) (same); *Norfolk & West. R.R. v. Hoover*, 79 Md. 253, 262, 29 A. 994, 995 (1894) (same); *State ex rel. Hamelin v. Malster*, 57 Md. 287, 306 (1881) (same); *Tyler v. Fuller*, 132 N.H. 690, 569 A.2d 764, 768, 769 (1990) (provide safe equipment); *Kranig v. Richer*, 98 Wis.2d 438, 297 N.W.2d 26, 28 (1980) (furnish proper tools and machinery); *Crawford v. Dickman*, 72 Wis.2d 151, 240 N.W.2d 165, 167 (1976) (control employees).

The second prerequisite for employer immunity is that the supervisor act in the course of his or her employment. The words "in the course of" employment essentially refer to the time, place, and circumstances under which an injury occurred. *See Knoche v. Cox*, 282 Md. 447, 455, 385 A.2d 1179, 1183 (1978); *Maryland Cas. Co. v. Insurance Co. of N. Am.*, 248 Md. 704, 707, 238 A.2d 88, 90 (1968); *Miller v. Coles*, 232 Md. 522, 526, 194 A.2d 614, 615 (1963). Thus, the supervisor must have acted "during the period of employment at a place where the employee reasonably may be in the performance of his [or her] duties 'and while he [or she] is fulfilling those

---

**8.** An employer's responsibility at common law was to discharge five specific duties relevant to safety:

 1) to provide a safe workplace;

 2) to provide safe equipment in the workplace;

 3) to warn employees about the existence of dangers of which the employees could not reasonable be expected to be aware;

 4) to provide a sufficient number of competent fellow employees; and

 5) to promulgate and enforce rules governing employee conduct for the purpose of enhancing safety.

W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*, § 80 at 569 (W. Keeton ed. 1984).

duties or engaged in ... something incident thereto.'" *May Dept. Stores Co. v. Harryman,* 307 Md. 692, 695, 517 A.2d 71, 72 (1986) (quoting *Dep't of Correction v. Harris,* 232 Md. 180, 184, 192 A.2d 479, 481 (1963)) (quoting *Watson v. Grimm,* 200 Md. 461, 466, 90 A.2d 180, 183 (1952)).

## IV.

 The respondent meets both prongs of the test articulated in *Athas* and, as such, is entitled to the immunity of his employer.

 The respondent did not commit an affirmative direct act of negligence toward the petitioner. On the day that the petitioner was injured, and, in fact, at the moment of the accident, the respondent was acting as the "working foreman superintendent" [9] of the Point Breeze project. As foreman on the job site, the respondent was responsible for discharging Knott's duty to provide the petitioner with a safe place to work and to retain competent employees. There is no dispute that among the duties encompassed within that job description was the assignment of workers on site to perform tasks in furtherance of the completion of the project. That responsibility, in turn, involved ensuring that those workers have the ability to perform the tasks and, with regard to the other workers on site, to do so safely. These duties are required to be performed by the foreman in furtherance of his employer's responsibility to provide a safe workplace for its employees. Thus, the very act upon which the petitioner relies to establish a breach of duty owed to him—the respondent's assignment to Wilkinson of the task of operating the backhoe—is one that was undertaken in fulfillment of a nondelegable duty the employer owed its employees. *See Ramey,* 874 F.2d at 952; *Crawford,* 240 N.W.2d at 167; *Kruse,* 213 N.W.2d at 67. Whether and, if so, how, the respondent

---

9. In testimony at trial, although respondent was referred to as supervisor, superintendent, foreman, acting foreman, and working foreman among other similar titles, respondent's superior, Craig Allen, conceded that all of those terms were used interchangeably.

performed the necessarily related acts of ascertaining Wilkinson's ability to perform the task assigned competently and safely and providing adequate supervision address the quality of the respondent's discharge of the employer's duty. That he may have performed it negligently does not transform the duty from one owed the employer into one owed as a coemployee; "a supervisory coemployee who performs the nondelegable duty of the employer does not thereby assume a personal duty toward his fellow employees." *Athas*, 300 Md. at 148, 476 A.2d at 718. By undertaking the managerial and personnel functions of his position, the respondent assumed an obligation to Knott only. *Id.* at 149, 476 A.2d at 718.

And the acts in question did occur in the course of the respondent's employment. It was as supervisor that the respondent assigned Wilkinson to operate the backhoe. Moreover, both the assignment and the subsequent accident occurred on the job site, during the course of the normal work day.

## V.

Rather than dispute the *Athas* test or its application, the petitioner challenges whether, when the facts would support a jury finding that the supervisor breached a personal duty imposed upon him by law, to the petitioner, the supervisor "can escape liability therefore by pleading, in effect, that he has breached a *second* duty also, namely, his 'obligation to his employer' to exercise the latter's duty to provide a safe place to work." The Petitioner's Brief at 9. His answer is, of course, that the supervisor cannot avoid liability under such circumstances. In support of his argument, the petitioner focuses on language in *Athas, i.e.,* "if a supervisory coemployee commits an affirmative direct act of negligence toward an employee, and therefore negligently breaches a personal duty of care which is reasonably owed by him to the fellow employee, then he would not be immunized from liability," *Athas* at 149, 476 A.2d at 718, and several of the "Wisconsin approach" cases relied upon by this Court in *Athas, i.e., Laffin v. Chemical Supply Co.,* 77 Wis.2d 353, 253 N.W.2d 51, 53 (1977)

(reference to breach of personal duty "over and beyond" the duty to the employer); *Kruse v. Schieve*, 61 Wis.2d 421, 213 N.W.2d 64, 67 (1973) ("Under what circumstances can a duty be owed to a fellow employee *additional to* and different from the duty of proper supervision that is owed to the employer by a ... supervisory employee? Clearly *something extra* is needed over and beyond the duty owed the employer." (Emphasis added)); *Hoeverman v. Feldman*, 220 Wis. 557, 265 N.W. 580, 582 (1936) (president, "while managing and supervising" affairs of the company, negligently "assume[d] to direct and order" an employee in the operation of a machine, provided the added element). The petitioner concludes that liability should be found where there has been a breach of a personal duty "above and beyond," "in addition to," or as "something extra" to the breach of the duty of the employer to provide a safe work place. Moreover, he contends that *Hoeverman* is directly on point, and indeed on all fours with the case *sub judice*. Thus, because in *Hoeverman,* the president of the company was held liable for having committed, "while managing and supervising [the company's] affairs" the affirmative and direct act of ordering and directing the plaintiff to operate a machine in a manner which he knew or should have known was dangerous to the said employee, the petitioner argues:

> Here, Appellee Mechalske, "while managing and supervising [such] affairs" of his employer as had been delegated to him, committed the affirmative and direct act of negligently delivering to the possession and control of Robert Wilkinson a dangerous instrumentality which he knew or ought to have known Wilkinson was not competent to operate safely—not merely, negatively, failing to furnish safe and safely operated equipment.

The Petitioner's Brief at 12.

*Athas* clearly provides that "a supervisory coemployee who performs the nondelegable duty of the employer does not thereby assume a personal duty toward his fellow employees." 300 Md. at 148, 476 A.2d at 718. Nevertheless, the petitioner seeks to avoid the result *Athas* would require in this case by

claiming that the respondent breached a second duty that extends "above and beyond" the immunity granted in *Athas*. He does so by directing the focus on the acts of the respondent rather than the *capacity* in which the respondent acted. Regardless of the factual merits of the negligent entrustment claim, notwithstanding that he committed the acts alleged— the respondent did in fact supply Wilkinson with the backhoe and assign him to operate it—that conduct, including also directing Wilkinson with regard to how to accomplish the assigned task, and inquiring as to Wilkinson's experience in operating similar equipment, was undertaken by the respondent as a supervisor acting on behalf of his employer, in the performance of the employer's nondelegable duty. It was not an affirmative direct act of negligence committed against the petitioner. So viewed, it becomes clear that, at no point did the respondent "doff" the cap of supervisor and "don" the cap of a coemployee. *Athas*, 300 Md. at 144, 476 A.2d at 716 (quoting *Laffin v. Chemical Supply Co.*, 77 Wis.2d 353, 253 N.W.2d 51, 53 (1977)).

In point of fact, *albeit* not in the context of negligent entrustment, this Court, in *Athas*, expressly rejected the argument the petitioner makes here. Having stated the rule that a supervisory employee is a third party within the meaning of section 58 when he or she commits an affirmative direct act of negligence toward an employee, we considered whether, under the facts presented, that had occurred. *Id.* 300 Md. at 149, 476 A.2d at 718. We pointed out that the supervisors in that case had not committed any affirmative, direct act of negligence toward Athas, since they had no reason to know of and were not required to inquire into the criminal record of the employee they had hired. *Id.* at 150, 476 A.2d at 719. We then said: "Further, if indeed the officers knew of Hill's involvement in altercations while employed at the club and did nothing about this behavior, then they merely breached the duty of providing a safe place to work which Summit owed to Athas." *Id.*

Similarly, in the case *sub judice*, to the extent that the respondent should have been alerted, by his inquiry of Wilkin-

son, as to Wilkinson's inability safely and competently to operate the backhoe, he merely breached Knott's duty of providing the petitioner with a safe place to work; he did not affirmatively, directly commit an act of negligence toward the petitioner, although, had Wilkinson been injured, he may have done.

*Kruse* and *Hoeverman* are not to the contrary. In *Kruse* the court analyzed Wisconsin law to determine when a corporate officer is personally liable for an act of negligence committed against an employee of the company. It concluded:

> Third-party actions against corporate officers [are permitted] only when such officer has doffed the cap of corporate officer, and donned the cap of a coemployee. In ... *Hoeverman* [*v. Feldman*, 220 Wis. 557, 265 N.W. 580, 582–83 (1936)], it was alleged that the president of a corporation carelessly directed a plaintiff employee to operate a machine in a particular manner and the employee was injured. [The] court held that the corporate officer could be held liable, not for his acts as a corporate president, but for his failure at common law toward a fellow employee to whom, under the ... circumstances ... he owed a duty. In [*Wasley v. Kosmatka*, [50 Wis.2d 738], 184 N.W.2d 821, 823 (Wis.1971)], a corporate officer negligently operated a boom truck which caused the death of the employee ... The decision makes clear that while the defendant was a corporate officer ... at the time of the accident[,] he was acting in the capacity of a coemployee, not in his capacity as president of the corporate employer, and the defendant is *therefore* subject to a third-party action. Liability of a corporate officer in a third-party action must derive from acts done by such officer in the capacity of a coemployee, and may not be predicated upon acts done by such officer in his capacity as corporate officer.

213 N.W.2d at 66–67 (emphasis in original, footnotes omitted). As pointed out in *Kruse*, in directing his employee, who was thereby injured, the president of the company was not acting in his role as president; rather he was acting as a coemployee. *See Kruse, supra,* 213 N.W.2d at 66–67. As we have already

explained, the acts upon which the petitioner seeks to hold the respondent liable were done by him in his capacity as supervisor, not coemployee. Had the accident occurred while the respondent was operating the backhoe, thus, acting as a coemployee, or had Wilkinson been the injured party, a different result might well have been required. Accordingly, the respondent cannot be held personally liable for those acts.

This is the view of other courts that have addressed the issue. *See, e.g., Raulerson v. Roehr,* 511 So.2d 1027, 1029 (Fla.2d DCA 1987) ("a [supervisor] becomes amenable to suit as a coemployee when he commits an affirmative act of negligence which goes beyond the scope of the nondelegable duty of the employer to provide his employees with a safe place to work"); *Nelson v. Rodgers Hydraulic Inc.,* 351 N.W.2d 36, 38 (Minn.App.1984) ("A claim must be based on the coemployee's acts of direct negligence towards the plaintiff, his personal fault rather than any fault vicariously imposed on him"); *Kranig v. Richer,* 98 Wis.2d 438, 297 N.W.2d 26, 28 (1980) ("We have repeatedly held that, when officers or supervisory employees act in the capacity of supervising other workers or in their capacity to furnish or maintain a place of work or to furnish tools or machinery, they act not as coemployees but as agents for the employer. When so acting, they are clothed with the immunity that inures to the employer as being exclusively liable only under the compensation act"); *Crawford v. Dickman,* 72 Wis.2d 151, 240 N.W.2d 165, 167 (1976) ("a complaint that leaves in doubt whether the defendant breached his duty in the course of his employer's duties or whether the defendant breached a duty owed the injured co-employee will not be construed to state a cause of action against a co-employee").

## VI.

The claim that the respondent should be denied employer immunity because he was not the actual supervisor of the petitioner is simply without merit. *See Inner Harbor Warehouse, Inc. v. Myers,* 321 Md. 363, 373–76, 582 A.2d 1244, 1249–50 (1990); *State v. Benjamin F. Bennett Bldg. Co.,* 154

Md. 159, 162, 140 A. 52, 53 (1928). Applying this provision, and the *Athas* holding that a supervisor discharging his or her employer's nondelegable duty is entitled to that employer's immunity, Knott is a statutory employer, who is treated, for purposes of the Act, as though it were the petitioner's actual employer. *See also Brady v. Ralph Parsons Co.*, 308 Md. 486, 499–502, 503 n. 17, 520 A.2d 717, 724–26, 726 n. 17 (1987); *Ramey*, 874 F.2d at 948; *Pardue v. Ruiz*, 263 Ga. 146, 429 S.E.2d 912, 914 (1993) (vice president and safety officer of general contractor entitled to employer's immunity under workers' compensation statute). As such, Knott has the same obligation to provide workers' compensation benefits to the petitioner as Glen Arm, the petitioner's actual employer, and it is entitled to the same immunity from suit. Since Glen Arm's employer immunity extends to supervisory employees performing the employer's nondelegable duties, Knott's employer immunity also so extends. Accordingly, as the respondent points out, the relevant inquiry is "in what capacity was the supervisor acting?," not whether his or her supervisor is the same as the plaintiff's.

The petitioner argues that the respondent's attempt to use section 62(a)'s "statutory employer" provision to confer on himself the status of "supervising coemployee" is unavailing because the proceedings are not taken against the principal contractor. As he puts it:

> This is not a proceeding against William H. Knott, Inc.; it is a proceeding against Steven Mechalske. Therefore, Appellant Ronald W. Hastings may *not* be deemed, for purposes of *this* action, to be a statutory employee of William H. Knott, Inc.; and § 62 may not be interpreted to transform a relationship in which Appellee is not a 'co-employee' of Appellant into one where he has that status.

The Petitioner's Brief at 15.

In point of fact, proceedings were taken against the principal contractor. Indeed, the petitioner sued the respondent and Knott in the same count, it being alleged that the respondent negligently entrusted the backhoe to Wilkinson "as

agent, servant and employee of Knott." Summary judgment in favor of Knott was granted on the ground that, as the petitioner's statutory employee, it was entitled to immunity under the Workers' Compensation Act. It would be incongruous indeed if the statutory employer is granted immunity but one who acted in its stead is not, not to mention inconsistent with *Athas* and the policy underlying that decision.

In sum, we hold that a supervisory coemployee is entitled to immunity under the Act if, at the time of the accident: (1) he or she is performing a nondelegable duty of the employer; and (2) he or she performed that duty during the course of his or her employment.

*JUDGMENT AFFIRMED WITH COSTS.*