REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2427

September Term, 2015

_____

MATTHEW PETTY

v.

MAYOR AND CITY COUNCIL OF
BALTIMORE CITY, et al.

_____

Arthur,
Shaw Geter,
Thieme, Raymond G., Jr.
    (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Thieme, J.
_____

Filed:  March 28, 2017

Matthew Petty, appellant, appeals from an order issued by the Circuit Court for Baltimore City granting summary judgment in favor of appellees, the Mayor and City Council of Baltimore, several employees of the Baltimore City Fire Department, and the Baltimore City Professional Fire Fighters, IAFF Local 734.  Appellant presents one argument on appeal:  Did the circuit court err in entering summary judgment against him?  For the reasons that follow, we shall affirm.

## FACTS

On August 13, 2015, appellant filed a four-count complaint in the Circuit Court for Baltimore City against the Mayor and City Council of Baltimore (the "City"); four employees of the Baltimore City Fire Department ("BCFD"), specifically, Jeffrey Segal, Mark Wagner, James Wallace, and Charles Dwyer; and the Baltimore City Professional Fire Fighters, IAFF Local 734 (the "Union").  Appellant had been an employee with the BCFD from September 18, 1995, until April 15, 2015, when he was discharged.  During his employment, appellant had risen through the ranks, and at the time of his discharge he was an emergency vehicle driver assigned to a HAZMAT unit.  It is not disputed that appellant was a dues paying member of the Union at all relevant times.

The first count of appellant's complaint was an action for intentional infliction of emotional distress against each of the defendants.  He alleged that during his employment he was subject to "unjustified, illegal and malicious harassment" by Wagner, Wallace, and Dwyer, that caused, without elaboration, "certain disciplinary actions" and "disparate adverse treatment" to be made against him; "cast [asper]sions" on his character; and

violated his rights to seek assistance from his Union. He alleged that the City, the BCFD, and Segal, Assistant Chief of the BCFD, acquiesced in those actions.

The second count alleged tortious interference with contract and was against Wagner, Wallace, and Dwyer, who allegedly induced the BCFD to "breach its contractual obligations" regarding employment opportunities and promotions for appellant. Appellant alleged, again without elaboration, that as a result of those employees' actions he was removed from his position and forced to resign.

The third count alleged negligence by: 1) the City, the BFCD, and Segal for allowing the three named employees to harass appellant; and 2) the City and the BFCD for failing to provide appropriate medical care to appellant for the work-related injury to his right hand and thumb, which caused "serious permanent disability," and in failing to properly process appellant's retirement claim.

The fourth count alleged breach of contract and alleged that the Union failed to represent him in his employment claims.

Appellees responded by moving for summary judgment. In support of their motion appellees argued, among other things, that appellant had failed to exhaust administrative remedies before filing the action in circuit court; appellant's tort claim was barred by the Maryland Workers' Compensation Act ("MWCA"), *see* Md. Code Ann., Lab. & Empl. §§ 9-101, *et. seq.*; and appellant's tortious interference with contract claim against the three named employees was not actionable because the employees were parties to the contract with the City. Appellees clarified that appellant was removed by administrative action for two reasons. First, he was deemed no longer fit for duty by the opinion of the Medical

Director of the Mercy Medical Center Public Safety Infirmary due to the injury to his hand. Second, appellant had exhausted his paid leave (from January 8, 2014 to April 15, 2015) for a line of duty injury and had to either return to work, be separated from City employment, or challenge his status by means of an internal appeal or grievance, which he has not done.

The Circuit Court for Baltimore City agreed with appellees and entered summary judgment against appellant on grounds that he did not exhaust his administrative and contractual remedies.

## DISCUSSION

Appellant argues on appeal that the circuit court's ruling was in error, because the ruling was "erroneously predicated on the assumption" that his claims were "within the scope of available administrative and contractual remedies." Appellees preliminarily respond that appellant has waived his appeal because he has cited no case law to support his argument. Even if appellant's argument is preserved, appellees argue that the circuit court's ruling was correct – appellant was required and failed to exhaust available remedies under the Baltimore City Charter, Art. VII, § 100, and Arts. 6 and 12 of the Memorandum of Understanding (MOU) between the City and the Union and the MWCA.

We will quickly dismiss appellees' waiver argument. Md. Rule 8-504, governing the content of appellate briefs, contains no requirement that an appellant must cite case law in support of his arguments. *Anderson v. Litzenberg*, 115 Md. App. 549, 577-78 (1997), the main case cited by appellees for its waiver argument, stands for the proposition that where a brief only recites facts and does not relate those facts to a legal theory, we shall

3

not address the potential merits of the argument presented. Here, appellant contests the lower court's grant of summary judgment. Appellant cites several cases regarding the standard of review for summary judgment and several legal theories on which his claims are based. Although his arguments are not the pinnacle of clarity, they are sufficiently presented, factually and legally, for our review.

Md. Rule 2-501(f) provides, in relevant part, that "[t]he court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." We review an order granting summary judgment *de novo*. *See Todd v. Mass Transit Admin.*, 373 Md. 149, 154 (2003)(citations omitted). Accordingly, we first determine whether a dispute of material fact exists, and if not, only then will we proceed to determine whether the movant is entitled to judgment as a matter of law. *O'Connor v. Baltimore County*, 382 Md. 102, 110 (2004). Because there are no disputed material facts, the standard of review is whether the trial court was legally correct.

The MOU for fiscal years 2014-2016 memorializes the understanding between the City and members of the Union on a range of issues, including wages, hours, discipline and discharge, health, and other terms and conditions of employment. MOU Art 6:A defines "grievance" as "a dispute concerning the application or interpretation of the terms of [the MOU]" or "a claimed violation, misinterpretation, or misapplication of the rules or regulations of the [e]mployer affecting the terms and conditions of employment[.]" Article 6:A sets forth the grievance procedure in detail. *See* MOU Art. 6:A. Additionally, MOU

4

Article 12:A provides that "[a]ny employee who is discharged, reduced in pay or position, or suspended for more than thirty (30) days may contest the action either (i) by lodging an appeal with the Civil Service Commission . . . or (ii) by filing a grievance on the form that is referred to in Article 6[.]" None of the complained actions occurred outside the scope of appellant's employment. Therefore, appellant's termination and the conduct that negatively affected the terms and conditions of his employment were subject to the mandatory grievance procedure of the MOU.

Appellant attempts to avoid this result with several arguments. First, he argues that the word "may" in Article 12:A, setting forth the two avenues for grievance, is permissive rather than mandatory, which appellant suggests permits an employee to take other avenues for a grievance. We reject this interpretation. We are persuaded that the use of the word "may" in Article 12:A clearly means that an employee who is discharged, or whose pay or position is reduced may either choose between the two exclusive actions offered – appealing to the Civil Service Commission or filing a grievance – or an employee may do nothing at all. *Cf. Gazunis v. Foster*, 400 Md. 541, 565 (2007)(reaching the same interpretation of the word "may" in a collective bargaining agreement).

Second, appellant argues that the MOU applies only to the limited actions stated in Article 12:A, an employee who is discharged, reduced in pay or position, or suspended for more than 30 days. Appellant argues that Count 1 and 4 of his complaint do not allege wrongs based on discharge, reduction of pay, or suspension. Appellant also argued, during oral arguments, that his use of the adverbs "unjustified", "illegal", and "malicious" to

describe the actions complained of, took his claims outside the employment context. We disagree.

Appellant's claims for intentional infliction of emotional distress (Count I), tortious interference with contract (Count II), and negligence (Count III) are all clearly based on employment actions and duties and are covered by MOU 6:A. Because all of appellant's claims arise out of his employment and are based on duties established and defined in the MOU, he is bound by the administrative procedures set forth in the MOU.[1] *Cf. Fleming v. United Parcel Serv.*, 604 A.2d 657, 671 (N.J. Super. Ct. Law. Div. 1992)(holding that an employee's tort claim is so inextricably intertwined with the terms of the labor contract that the employees tortious interference claim is preempted and cannot be adjudicated without consideration of the labor contract). Moreover, the use of adverbs to describe a claim regarding one's employment does not elevate the claim outside the employment context. *Cf. Nash v. AT&T Nassau Metals*, 381 S.E.2d 206, 209-10 (S.C. 1989)(employee Nash's claim that Nassau deliberately and willfully deprived him of his benefits and terminated his employment was preempted because whether the actions were "illegal" involved a determination as to whether the parties complied with the employment contract).

Additionally, that part of Count III which relates to appellant's claim involving his work-related injury is actionable solely under the MWCA. The MWCA is a

---

[1] Appellees are also correct that appellant's tortious interference with contract claim cannot lie against the other City employees because they are party to the contract to which they allegedly interfered, and agents of the employer. *See Kaser v. Fin. Protection Mktg., Inc.*, 376 Md. 621, 630 (2003) and *Pope v. Board of School Comm'rs of Baltimore City*, 106 Md. App. 578, 592 (1995), *cert. denied*, 342 Md. 116 (1996).

"comprehensive scheme to . . . provide sure and certain relief for injured workmen, their families and dependents regardless of questions of fault." *Hastings v. Mechalske*, 336 Md. 663, 672 (1994)(quotation marks and citations omitted). The MWCA entitles covered employees to compensation for accidental injuries that arise out of the course of employment and is the "exclusive remedy" for an injured employee against his employer. *Rodrigues-Novo v. Recchi America, Inc.*, 381 Md. 49, 57 (2004); *Hastings*, 336 Md. at 672; and Lab. & Empl. §§ 9-101(b), 9-501, 9-509(a).

Lastly, we also note that appellant's breach of contract claim against the Union (Count IV), and to the extent he alleges a cause of action against the Union in tort and contract, is not actionable. As the appellees correctly point out, appellant's cause of action against the Union is based on the theory of breach of the duty of fair representation. This theory is "based on the member's claim that the union had, without good cause or reason, refused to take to arbitration the member's grievance against his employer." *Byrne v. Mass Transit Admin.*, 58 Md. App. 501, 508 (citation omitted), *cert. denied*, 300 Md. 794 (1984), *cert. denied*, 471 U.S. 1016 (1985). This is because the Union is required to: 1) serve all of its members without hostility or discrimination; 2) exercise its discretion with good faith and honesty; and 3) avoid arbitrary conduct. *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)(citation omitted). Before the Union has any duty to represent, however, the member must file a grievance. *See* MOU Art. 6:C. Because appellant never grieved and did not pursue his contractual remedy, he has no cause of action against the Union.

In sum, because appellant failed to exhaust the administrative and statutory remedies available, the lower court properly granted summary judgment.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**