*Annette Blake v. David Chadwick, et al.*, No. 1939 of the 2019 Term, Opinion by Moylan, J.


**HEADNOTE:**


**CONTRIBUTORY NEGLIGENCE – A FLURRY OF PLEADINGS – SUMMARY JUDGMENT – A THREE-CAR PILE-UP: TINKER TO EVERS TO CHANCE – GENERIC NEGLIGENCE VS. CONTRIBUTORY NEGLIGENCE – PROXIMATE CAUSATION – "BUT FOR" IS NOT THE APPROPRIATE CRITERION – IN HARM'S WAY – ONE LAST PROCEDURAL HICCUP**

Circuit Court for Baltimore City
Case No. 24-C-18-006404

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1939

September Term, 2019

_____

ANNETTE BLAKE

V.

DAVID CHADWICK, ET AL.

_____

Fader, C.J.,
Zic,
Moylan, Charles E., Jr.
  (Senior Judge, Specially Assigned),


JJ.

_____

Opinion by Moylan, J.
_____


Filed: February 26, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

As a result of a three-car collision on Martin Luther King Boulevard ("MLK Boulevard"), the appellant, Annette Blake ("Ms. Blake"; "the Plaintiff"; "Vehicle #3"), filed suit against the other two drivers in the Circuit Court for Baltimore City. Because of the multiplicity of parties and of vehicles, we will try meticulously to keep them all as precisely identified as possible. Ms. Blake was the Plaintiff and she brought suit on behalf of herself and her two minor grandchildren, all of whom were in Vehicle #3. There are two appellees. The first is Defendant #1, David Chadwick ("Mr. Chadwick"), who was driving a truck owned by his co-defendant, the Mayor and City Council of Baltimore City, and referred to herein as Vehicle #1. The second appellee is Defendant #2, Denia Phillips Watkins ("Ms. Watkins"), who was driving Vehicle #2.

## A Flurry Of Pleadings

The accident occurred on August 2, 2016. Suit was filed by Ms. Blake against both defendants on November 27, 2018. On August 28, 2019, Mr. Chadwick, along with the City of Baltimore, filed a Motion for Summary Judgment. Ms. Blake filed an Opposition to Chadwick's Motion for Summary Judgment on September 16, 2019. Ms. Watkins, Defendant #2, who had not theretofore been heard from, filed a Response to Co-Defendant's Motion for Summary Judgment on September 20, 2019, in which she also asked for Summary Judgment in her favor.

A hearing was held before the circuit court on October 16, 2019 on Chadwick's Motion for Summary Judgment. Although not listed as part of the title of the hearing, Defendant #2, Ms. Watkins, was represented by counsel at the hearing, who fully

participated in the hearing in every respect. On October 25, 2019, the court issued an Order and Memorandum Opinion in which it found that Ms. Blake had been contributorily negligent and, accordingly, it granted Summary Judgment in favor of Defendant #1, Mr. Chadwick. There was no disposition made with respect to Defendant #2, Ms. Watkins.

On November 4, 2019, the appellant, Ms. Blake, filed a Motion for Clarification, Reconsideration, and Alteration. In that motion, Ms. Blake made express reference to a pleading filed by Ms. Watkins in which she also had requested Summary Judgment in her favor. Ms. Blake pointed out that the court's Order in the case "had been silent as to Plaintiff's claims against Defendant #2, Ms. Watkins." Among the clarifications sought by the Motion were:

> 5. All Plaintiffs seek clarification of the Order with respect to the continuance of their claims against Defendant Denia Watkins.

On November 18, 2019, both defendants filed separate Oppositions to the Plaintiff's Motion For Clarification in which they each renewed their requests for Summary Judgment. On December 9, 2019, the court issued an Order in which it reaffirmed its granting of Summary Judgment in favor of both defendants, Mr. Chadwick and Ms. Watkins.

## Summary Judgment

The basic standard of appellate review with respect to the granting of Summary Judgment was well articulated by <u>Rooney v. Statewide Plumbing & Heating-Gen. Contractors, Inc.</u>, 265 Md. 559, 563, 290 A.2d 496 (1972):

If the pleadings, depositions, admissions, and affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law, then summary judgment should be granted.

*See also* Rossello v. Zurich Am. Ins. Co., 468 Md. 92, 102, 226 A.3d 444 (2020).

The granting of summary judgment is reviewed *de novo*. Petty v. Mayor & City Council of Baltimore City, 232 Md. App. 116, 121, 156 A.3d 976 (2017). "In reviewing a grant of summary judgment under Md. Rule 2-501, we independently review the record to determine whether the parties properly generated a dispute of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." Hill v. Cross Country Settlements, LLC, 402 Md. 281, 293, 936 A.2d 343 (2007). In granting or denying a motion for summary judgment, a trial court makes no findings of fact, and in deciding whether a material factual dispute exists, all reasonable inferences drawn from the facts must be resolved in favor of the non-moving party. King v. Bankerd, 303 Md. 98, 111, 492 A.2d 608 (1985).

All parties agreed that this was an appropriate case for the granting of Summary Judgment. There were no genuine disputes with respect to any of the basic first-level facts. The only dispute was whether those facts, as a matter of law, justified a finding that the appellant-plaintiff, Ms. Blake, was barred from recovery against either defendant on the ground that she herself had been contributorily negligent.

### A Three-Car Pile-Up: Tinker To Evers To Chance

The accident itself was simply the final episode of a significantly longer chain of events. It is nevertheless the place to begin before we undertake our longer look backward.

3

The accident occurred in the northbound lanes of the Martin Luther King Boulevard, immediately north of the point where an exit ramp from MLK Boulevard leads up to eastbound traffic on Mulberry Street. At that point, there are three northbound lanes on the MLK, but no semblance of a shoulder to either the right or the left.

The timing is also of critical significance. The accident occurred on August 2, 2016 at approximately 4:30 P.M. That was at the height of the late-afternoon rush hour traffic when the congestion was literally bumper to bumper. The appellant, Ms. Blake, in Vehicle #3 (a minivan), was in the right-hand lane. Immediately after the point where she had passed the exit ramp up to Mulberry Street, the engine in her minivan overheated and her minivan came to a complete stop. Ms. Blake turned on her hazard lights and then placed a call to her auto repairman, who could only advise her to let the minivan cool off, notwithstanding the fact that she was sitting on center stage. From the moment her minivan broke down through the conclusion of her call to her auto repairman, approximately two minutes elapsed. During those two minutes, Ms. Blake did not attempt to take herself or her two grandchildren, who were in the rear seat of the minivan, to a place of safety off the crowded roadway and onto the sidewalk.

It was just as Ms. Blake was finishing her phone call to her auto repairman that Vehicle #2, a 2007 Mazda 6, operated by Defendant #2, Ms. Watkins, came crashing into her minivan. The right front side of the Mazda 6 crashed into the middle driver's side door of the left side of the minivan.

4

Ms. Watkins had also been driving in the right lane when she noticed that Ms. Blake's minivan had come to a full stop in the right lane in front of her. In full control of her own vehicle, she also came to a full stop and waited. She waited until the middle lane, immediately to her left, had cleared of traffic before she moved out into that lane in order to drive around Ms. Blake's stalled vehicle. In her deposition, she had testified:

> I could see a car that was stalled up ahead of me. <u>I stopped well before I got to the car, because there were cars going past in the other lane. I waited until it was clear, looked out the window just to see that it was clear</u>, got into the middle lane, my car was hit by the truck. <u>It was pushed into the van that was stalled</u>. The truck kept going and it hit a tree on the right side.

(Emphasis supplied.)

It was at that point that Vehicle #1, the 4 by 4 pickup truck driven by Mr. Chadwick and owned by the City of Baltimore came crashing into Ms. Watkins' Mazda in the middle of the center lane.[1] Just as Ms. Watkins was moving from the right-hand lane into the middle lane, Mr. Chadwick, driving the City truck, was moving from the left-hand lane into the same middle lane. It was virtually a simultaneous attempted merger. In his deposition, Mr. Chadwick described the collision:

> At the time I was traveling north on Martin Luther King. Coming up to Martin Luther King and Mulberry Street <u>I could see a disabled vehicle in the first lane past Mulberry Street</u>. Traveling past, going past <u>I was in between Mulberry and Franklin Street. About four cars was in front of me at the light</u>. <u>I get a call from dispatch saying that I have another emergency to go to, so I put my blinker on, my right blinker to get into the center lane</u>. By <u>it being heavy traffic</u> I'm taking my time, <u>I'm looking cautiously multiple times into the center lane, so I could have clear path to</u>

---

[1]     Or, perhaps, it was the case that Ms. Watkins' Mazda came crashing into Mr. Chadwick's pickup truck. Or, perhaps, it was the case that each came crashing into the other. In any event, the nuances of that collision in the center lane is another case entirely.

5

> maneuver into the center lane. As I maneuver into the center lane I saw a clear path. Excuse me, <u>I saw a clear path</u>, so I went to go to maneuver into the center lane. <u>I pushed on the gas so I can get into the center lane and I heard a loud crash. I lost control of the vehicle and I went up top of the curb into a tree.</u>

(Emphasis supplied.) Mr. Chadwick explained that as his truck and Ms. Watkins' Mazda essentially merged into the same space, the Mazda had hit his truck "in the middle of the rear tire." From the points of impact on the respective vehicles, it appeared that in the race for the middle lane, Mr. Chadwick in his truck enjoyed a half a length lead over Ms. Watkins in her Mazda.

It was that collision between Vehicle #1 and Vehicle #2 that propelled Vehicle #2 into its collision with Vehicle #3, Ms. Blake's stalled minivan. The trifecta was complete. Ms. Blake filed suit against both Mr. Chadwick and Ms. Watkins. Both of those defendants, in turn, moved for Summary Judgment, claiming that Ms. Blake had been guilty of contributory negligence. Summary Judgment was entered in favor of both defendants, as the trial court ruled that Ms. Blake had, indeed, been guilty of contributory negligence.

### Generic Negligence vs. Contributory Negligence

With three disabled vehicles sitting in or near the Martin Luther King Boulevard, we turn our attention backward to the hours (or days) preceding the three-car collision. It was the defense of both defendants that it had been the contributory negligence of the Plaintiff that was responsible for the accident. They claimed that but for her negligence in driving a disabled vehicle, which could stall at any time, into crowded rush-hour traffic, the ensuing collision would never have occurred. The defendants may, however, be guilty of the leap of logic that casually assumes that negligence on the part of a plaintiff is

6

necessarily contributory negligence on the part of a plaintiff. To qualify as contributory negligence, it is not enough for negligence to exist. It must actively contribute.

Deferring for the moment, however, the significantly more complicated question of whether the appellant was contributorily negligent, we will examine first the constituent question of whether the Plaintiff's pre-accident behavior may have amounted to negligence generally. Two days prior to the accident of August 2, 2016, the appellant learned, from firsthand experience, that her minivan had a faulty radiator that was subject to overheating. The temperature gauge rose to "H." Steam began emanating from the car radiator and the car came to an abrupt stop. It would not start up again until the radiator had had the chance to cool down. After that stalling experience, the appellant consulted with "Andre," her auto mechanic, who informed her that she needed a new radiator. Unfortunately, Andre, whose garage is in East Baltimore close to the appellant's home at 610 East North Avenue, did not have a new radiator available and it was arranged that the appellant would purchase a radiator from Advance Auto Parts in the Westside Shopping Center in West Baltimore.

The appellant set out to get her new radiator on Tuesday, August 2, 2016. It was a hot and sunny August day. Instead of choosing an early morning departure or an evening departure so as to alleviate the overheating problem, the appellant set out in midafternoon. She took her two grandchildren with her in the back of her minivan. Her destination in the Westside Shopping Center was all the way across Baltimore from her home on East North Avenue. She chose to take a chance by driving her minivan instead of taking a cab or arranging for a friend to take her to West Baltimore.

7

Advance Auto Parts sold a new radiator to the appellant but informed her that they did not install new radiators. The appellant picked up the radiator and set out to cross Baltimore again in her minivan so that the new radiator could be installed by her own mechanic, Andre, at his shop in East Baltimore. Notwithstanding her knowledge that if her limo overheated and stalled, her only immediate recourse was to sit and wait for the radiator to cool down, the appellant chose a precarious route back to East Baltimore. Instead of "inching" her way across Baltimore on more leisurely side streets, where parking lanes or at least shoulders might have offered some asylum in an emergency, the appellant committed herself to the shoulderless mercy of the Martin Luther King Boulevard at 4 P.M., the heart of the late afternoon rush hour on a business day.

Even at the last minute, an exit onto Mulberry Street would have offered some relative amelioration of danger but the appellant chose not to take it. The fact that her minivan stalled and completely blocked one of the lanes of bumper to bumper traffic was virtually inevitable. Even then, the appellant chose to sit in place for two high-risk minutes, as she called her mechanic, rather than get herself and her two grandchildren out of the car and onto the relative safety of the adjacent sidewalk.

In a Memorandum accompanying the grant of Summary Judgment in favor of the two defendants, the trial court found and ruled:

> Here, Plaintiff <u>Blake was contributorily negligent when she drove a vehicle that she knew was in an unsafe condition during rush hour traffic</u>. Under the Md. Code Ann., Trans. Section 22-101(a)(1), Plaintiff <u>Blake was forbidden to drive the vehicle which she knew was in an unsafe condition to operate</u>. §22-101(a)(1)(i)-(ii). When Plaintiff Blake had last driven her car on July 31, 2016, two days before this

8

accident, the car stopped suddenly in the roadway when the engine overheated due to her broken radiator. *Def. Ex. 1, Blake Dep.* 28:12-15. <u>Despite knowing her car would stop due to an overheating radiator, Plaintiff Blake chose to drive the car on a hot summer day at 4:00 p.m. during heavy rush hour traffic</u> with two minor passengers. Further, Plaintiff Blake still decided to go to Advance Auto to pick up a new radiator at Westside Shopping Center with the intention of driving the vehicle back to her mechanic across town in East Baltimore. Thus, <u>Plaintiff Blake was contributorily negligent as she knew the radiator did not work yet chose to drive across town with a broken radiator, had reason to anticipate that the car would overheat and stall the engine again</u>, and chose to leave the vehicle stopped in the roadway.

(Emphasis supplied.)

Looking at appellant's behavior in a vacuum, we would fully agree with the trial court and with both defendants that the appellant's behavior was, as an abstract matter, dangerously negligent. Our agreement thus far, however, simply brings us to the point where we must compare generic negligence, as an abstraction, with contributory negligence in the context of a particular event.

## Proximate Causation

In and of itself, negligence is not enough. In <u>Rosenthal v. Mueller</u>, 124 Md. App. 170, 171, 720 A.2d. 1264 (1998), this Court was very emphatic about the difference between generic negligence and contributory negligence:

> This appeal turns on a simple principle. <u>With respect to the legal phenomenon of "contributory negligence," the limiting adjective "contributory" is just as significant and just as necessary an element as is the noun "negligence."</u> Untold <u>thousands of acts of negligence</u>, as purely abstract phenomena, <u>go regularly unnoticed and are legally inconsequential unless they actually contribute to some adverse result</u>.

(Emphasis supplied.)

In <u>Troxel v. Iguana Cantina, LLC</u>, 201 Md. App. 476, 504, 29 A.3d 1038 (2011), Judge Kehoe explained for this Court:

9

It is a basic principle that "negligence is not actionable unless it is a proximate cause of the harm alleged…To be a proximate cause of an injury, the negligence must be 1) a cause in fact, and 2) a legally cognizable cause.

(Emphasis supplied.)

In <u>Batten v. Michel</u>, 15 Md. App. 646, 652, 292 A.2d 707 (1972), this Court made it "black-letter" clear that unless negligence is a proximate cause of an accident, it, by definition, cannot be contributory:

Contributory negligence, if present, defeats recovery because it is a proximate cause of the accident; otherwise the negligence is not contributory.

(Emphasis supplied.)

As early as <u>Friedman v. Hendler Creamery Co.</u>, 158 Md. 131, 148, 148 A. 426 (1930), the Court of Appeals has been making precisely that same point:

Assuming, for the purpose of the question only, that these facts did show that plaintiff was negligent as a matter of law, yet unless such negligence was the direct and proximate cause of the accident, it would not bar her right to recover.

(Emphasis supplied.)

Judge Raker wrote for the Court of Appeals in <u>Pittway Corporation v. Collins</u>, 409 Md. 218, 244, 973 A.2d 771 (2009), in explaining that two basic tests have developed for determining causation in fact:

Causation-in-fact concerns the threshold inquiry of "whether defendant's conduct actually produced an injury." *Peterson,* 258 Md. at 16-17, 264 A.2d at 855. Two tests have developed to determine if causation-in-fact exists, the but for test and the substantial factor test.

(Emphasis supplied.)

The Court then set out the two tests:

10

> The "but for" test applies in cases where only one negligent act is at issue; cause-in-fact is found when the injury would not have occurred absent or "but for" the defendant's negligent act.
>
> When two or more independent negligent acts bring about an injury, however, the substantial factor test controls. Causation-in-fact may be found if it is "more likely than not" that the defendant's conduct was a substantial factor in producing the plaintiff's injuries.

Id. (Emphasis supplied.)

The "but for" test is appropriate where there is a single act of possible negligence involved. The flaw in the reasoning of the defendants in this case has been to treat it as a "but for" case. The defendants argue that "but for" the negligence of the appellant, Ms. Blake, in driving her disabled car into rush hour traffic on a hot day, the car would never have been stalled on Martin Luther King Boulevard in a place where it could have been hit by Vehicle #2 as it careened out of its collision with Vehicle #1.

The "but for" test, however, does not apply in a situation, such as the one in this case, where the party charged with negligence, notwithstanding having been guilty of antecedent negligence, is simply sitting passively in a vulnerable location. In this case, moreover, there was clearly involved a second and yet a third act of possible negligence. Ms. Watkins in Vehicle #2 fully observed that Ms. Blake had stalled in front of her in the right-hand lane. Ms. Watkins came to a full and safe stop. She did not veer out into the center lane to avoid crashing into a car in front of her that had come to a sudden and unexpected stop. Ms. Watkins sat quietly and patiently waiting for the center lane to clear. She expressly looked out of her left-hand window to make sure that the center lane was clear before venturing out into it. Ms. Watkins arguably, however, was not adequately

11

cautious before proceeding out into that center lane. The collision that ensued in that center lane was arguably attributable to the negligence of Ms. Watkins or to the negligence of Mr. Chadwick or to the negligence of both, but in no event to the negligence of Ms. Blake.

Mr. Chadwick in the meantime, sitting in his truck in the left-hand lane, had also observed the stalled Blake minivan in the right-hand lane. The right-hand lane, however, was essentially irrelevant to him. He was being held up in the left-hand lane by three or four cars waiting to make their left-hand turn onto Franklin Street westbound, when he received the call that an emergency involving an animal required his immediate presence at the scene. He carefully looked to his right, however, to make sure that the center lane was clear before venturing into it. Notwithstanding their respective statements, however, Mr. Chadwick or Ms. Watkins, one or both, were negligent in merging not into an empty middle lane but into each other. Their collision in the center lane, which sent the Watkins vehicle careening into the Blake minivan was an independent act of negligence all of its own, as Ms. Blake sat passively by. Whatever damage was incurred by her and her grandchildren and by her minivan was distinct and independent collateral damage from a collision to which she did not directly contribute. She was sitting passively in place when Vehicle #1 and/or Vehicle #2, one or both, attempted negligently to merge into the same space. In that collision between Ms. Watkins and Mr. Chadwick, the negligence of one and/or the other is a question that is not before us on the present appeal.

## "But For" Is Not The Appropriate Criterion

12

To be sure, both defendants claimed that "but for" Ms. Blake's antecedent negligence, she would not have been in a place where she was responsible for Ms. Watkins' need to leave the right-hand lane and attempt to merge into the center lane.

In like fashion, however, Mr. Chadwick needed to merge his pickup truck from the left-hand lane into the center lane because three or four cars were backed up in the left-hand lane waiting to turn onto Franklin Street westbound. Suppose after the collision in the center lane, his pickup truck had careened leftward into one of them instead of Ms. Watkins' Mazda careening rightward into Ms. Blake's minivan. Suppose, moreover, some act of antecedent negligence was responsible for that unlucky vehicle to have been in that particular spot at that particular time. If that vehicle owner had sued Mr. Chadwick, could Mr. Chadwick have defended on the ground that that antecedent negligence was contributory negligence? And what about the emergency call "but for" which Mr. Chadwick would not have felt it necessary to move out into the center lane? If that emergency call had been negligently issued, would the co-defendant City of Baltimore assume some blame for the ensuing accident?

If one ventures incautiously into the treacherous realm of "but for" causation, one may soon descend into the inescapable infinitude between two facing mirrors. "For the want of a nail, a shoe was lost; for the want of a shoe, a horse was lost; for the want of a horse, a rider was lost; for the want of a rider, a battle was lost; …" There are no theoretical limitations on this slippery slope of "but for" causation, where "but for" the want of a nail, a war may not have been lost. Thank Heaven for the law's proximate causation requirements!

13

In this case, "but for" causation has no place. Even granting Ms. Blake's antecedent negligence in driving her disabled minivan onto Martin Luther King Boulevard, her merely "passive and potential" negligence did not add up to a case of contributory negligence. Summary judgment should not have been granted in favor of the two defendants.[2]

**In Harm's Way**

A plaintiff does not, ipso facto, forfeit his right to recover for an injury simply because he negligently put himself in harm's way. In Rosenthal v. Mueller, 124 Md. App. 170, at 181, this Court was emphatic:

> Even assuming, arguendo, that the appellant's vehicle at the moment of collision was negligently "off the roadway" in a place where it should not have been, the only connection that fact would have had with the accident is that it placed the appellant in harm's way – at the wrong place at the wrong time.

(Emphasis supplied.)

In Myers v. Bright, 327 Md. 395, 408, 609 A.2d 1182 (1992), the Court of Appeals quoted at length and with approval from the Illinois Supreme Court in Lerette v. Director General of Railroads, 306 Ill. 348, 137 N.E. 811, 814 (1922):

> If the illegal act is a mere condition which made it possible for the accident to occur, but is in itself no part of the accident, it will not bar recovery. It is, of course, an essential condition of most accidents that the injured party be where he was at the time he was in order for the injury to occur, and the fact that he would not have been there if he had not been violating the law is not, in itself, a defense.

(Emphasis supplied.)

---

[2]     Even if summary judgment had been properly entered in favor of both defendants on the ground that Ms. Blake had been contributorily negligent, summary judgment would not have been appropriate on the suit brought against the defendants on behalf of the two grandchildren. They were not contributorily negligent. Because of our holding, however, that even Ms. Blake was not contributorily negligent, the distinction is moot.

14

In <u>Peterson v. Underwood</u>, 258 Md. 9, 264 A.2d 851 (1970), Judge Digges wrote for the Court of Appeals. A five-year-old boy was killed when a masonry wall, around which the boy had been playing, collapsed on him. The trial evidence revealed that the wall had been negligently constructed, in violation, <u>inter alia</u>, of the Baltimore City Code. The wall, however, albeit having been negligently constructed, had been standing for over four years. The antecedent negligence of the defendant was clear, but the plaintiffs had failed to prove proximate cause:

> We think <u>plaintiff's proof was clearly sufficient to allow the jury to find that Norman negligently constructed and Christine failed to inspect the wall</u>, and that Johnny's death was the result of the collapse of that wall. <u>What we find to be a fatal defect in appellant Underwood's case is lack of any evidence causally linking defendants' negligence to the injury suffered. Such a defect is described as a failure to prove that defendant's negligence was the proximate cause of the accident</u>.

258 Md. at 15. (Emphasis supplied.)

Judge Digges made clear that a "but for" analysis would not have been appropriate and that liability will not attach to conduct that is "merely passive and potential."

> Thus, <u>although an injury might not have occurred 'but for' an antecedent act of the defendant, liability may not be imposed if for example the negligence of one person is merely passive and potential, while the negligence of another is the moving and effective cause of the injury</u>.

258 Md. at 16. (Emphasis supplied.)

The circumstances in <u>Wood v. Johnson</u>, 242 Md. 446, 219 A.2d 231 (1966), bore an eerie resemblance to those in this case. The issue in that case, to be sure, was primary negligence and not contributory negligence. The qualifying requirements for proximate causation, however, are the same, regardless of which stage of negligence is being

15

considered. Car #1, arguably driving at a faster speed than should have been the case, crashed into the rear of a stalled vehicle blocking the lane in front of it. The plaintiff was a passenger in Car #1 that crashed into Car #2. The plaintiff, who was injured in the collision, sued both the driver of Car #1 for his negligent driving but also the driver of Car #2 for being negligently stalled. The Court of Appeals opinion, 242 Md. at 451, described the circumstances surrounding the stalled Car #2:

> As he was driving west on the boulevard, his car missed a couple of times and then 'conked out' completely; that the battery went dead as he tried to get it started again; that he had just gotten the car that day and had no prior difficulty in operating it; that after the engine stopped, he coasted into the right lane parallel to the north curb about a foot from it and stopped; that he sat in the car for about twenty minutes before the collision.

(Emphasis supplied.)

The Court of Appeals approved a jury instruction advising that the driver of the stalled vehicle was not contributorily negligent if his negligence, albeit negligence, was only passive and was, therefore, not a proximate cause of the ultimate collision:

> The instructions further told the jury that even if they should find negligence on the part of [the driver of the stalled vehicle] but should find that such negligence was passive and should also find negligence on the part of [the driver of the moving vehicle] and that such negligence was the moving and effective cause of the injury then the verdict should be in favor of the defendant, Huffman, and against the defendant, Wood, only. This amounts to no more than instructing the jury that, even if Huffman was negligent, he should not be held liable unless his negligence was a proximate cause of the collision.

242 Md. at 457-58. (Emphasis supplied.)

In Schwarz v. Hathaway, 82 Md. App. 87, 570 A.2d 348 (1990), Judge Robert M. Bell (later Chief Judge of the Court of Appeals) was writing for this Court in a case directly involving contributory negligence. This Court held that even if the decedent's behavior had

16

been negligent, it did not satisfy the proximate causation requirement if it was simply "passive and potential."

> Decedent's negligence, if negligence it is – standing and/or walking a motorcycle along the mini-shoulder – was at best "merely passive and potential."

(Emphasis supplied.) *See also* Peterson v. Underwood, 258 Md. 9, 16, 264 A.2d 851 (1970) ("Thus, although injury might have not occurred 'but for' an antecedent act of the defendant, liability may not be imposed if for example the negligence of one person is merely passive and potential, while the negligence of another is the moving and effective cause of the injury.") (Emphasis supplied.) *And see* Wankel v. A & B Contractors, Inc., 127 Md. App. 128, 157-59, 732 A.2d 333 (1999); Yonce v. SmithKline Beecham Clinical Laboratories, Inc., 111 Md. App. 124, 136-37, 680 A.2d 569, cert. denied, 344 Md. 118, 685 A.2d 452 (1996).

## One Last Procedural Hiccup

Before lowering the final curtain, one procedural hiccup remains to be resolved. Ms. Watkins, Defendant #2, has moved to have this appeal dismissed for having been untimely filed. Ms. Blake's appeal was filed on November 22, 2019. The appeal was from the ruling of the circuit court of October 24, 2019, in which the court ruled that Summary Judgment would be granted against Ms. Blake because she had been contributorily negligent. Between the grant of Summary Judgment on October 24 and the filing of the appeal on November 22, however, Ms. Blake had filed, on November 4, a Motion for Clarification, Reconsideration, and Alteration. That motion was still pending when the appeal was filed. All parties agree that Ms. Blake's November 4 Motion for Clarification, Reconsideration,

17

and Alteration was a Maryland Rule 2-534 Motion to Alter or Amend a Judgment. Maryland Rule 8-202(c) further provides, <u>inter alia</u>:

> <u>In a civil action, when a timely motion is filed pursuant to Rule</u> 2-532, 533, or <u>2-534, the notice of appeal shall be filed within 30 days after entry of</u> (1) a notice of withdrawing the motion or (2) <u>an order</u> denying a motion pursuant to Rule 2-533 or <u>disposing of a motion pursuant to Rule</u> 2-532 or <u>2-534</u>.

(Emphasis supplied.)

Ms. Watkins argues that the appeal was not filed within 30 days after Ms. Blake's Motion for Clarification was disposed of (on December 11) but had been filed before that Rule 2-534 motion was disposed of. This, Ms. Watkins argues, was a clear violation of Rule 8-202(a), which provides:

> Except as otherwise provided in this Rule or by law, <u>the notice of appeal shall be filed within 30 days after entry of the judgment</u> or order from which the appeal is taken.

(Emphasis supplied.)

She also claims that the premature filing of the appeal also violated Rule 8-602(b), which provides:

> When Mandatory. The Court shall dismiss an appeal if:
> (1) The appeal is not allowed by these Rules or other law; or
> (2) The notice of appeal was not filed with the lower court within the time prescribed by Rule 8-202.

Ms. Watkins' argument, as reflected by her brief, is very precise:

> Here, a specific portion of the Rules applies because <u>Blake filed a post-judgment motion</u>. Md. Rule 8-202(c). Maryland Rule 8-202(c) states, "<u>in a civil action, when a timely motion is filed pursuant to Rule</u> 2-532, 2-533, or <u>2-534</u>, <u>the notice of appeal shall be filed within 30 days after entry</u> of (1) a notice withdrawing the motion, or (2) <u>an order</u> denying a motion pursuant to Rule 2-533 or <u>disposing of a motion pursuant to Rule</u> 2-532 or <u>2-534</u>. A notice of appeal filed before the withdrawal or

18

disposition of any of these motions does not deprive the trial court of jurisdiction to dispose of the motion. Md. Rule 8-202(c).

Maryland Rule 8-202's mandatory language clearly required Blake to file her notice of appeal after the post-judgment motion had been disposed of, not before. Md. Rule 8-202(c). Nonetheless, Blake improperly filed her notice of appeal well-before the 2-534 motion was disposed of. Blake filed her Motion for Clarification, Reconsideration, and Alteration of the Order granting summary judgment in favor of City and Chadwick on November 4, 2019. This motion was filed pursuant to Rule 2-534. Blake filed her Notice of Appeal to the Court of Special Appeals on November 22, 2019. The Circuit Court disposed of the Motion on December 11, 2019.

Thus, Blake failed to comply with the timing requirements of the Maryland Rules. Md. Rule 8-202(c).

(Emphasis supplied.)

The issue posed in this case was squarely before the Court of Appeals in Edsall v. Anne Arundel County, 332 Md. 502, 632 A.2d 763 (1993). The Court of Appeals had accepted a certified question submitted to it by this Court. That question was:

If a notice of appeal is filed prior to the withdrawal or disposition of a timely filed motion under Rule 2-532, 2-533, or 2-534, must a new notice of appeal be filed within 30 days after withdrawal or disposition of the motion, or does the earlier filed notice of appeal suffice to constitute a timely appeal?

332 Md. at 503. (Emphasis supplied.)

Judge McAuliffe's opinion for the Court of Appeals discussed various changes in the Rules and stressed that the more modern trend has been "to give effect to notices of appeal that had been filed prematurely."

Members of the Court expressed the belief that there was a facial inconsistency between the last sentence of Rule 1012d, containing the nullification language, and the concept of attempting to give effect to notices of appeal that had been filed prematurely.

332 Md. at 506. (Emphasis supplied.)

19

The filing of a post-trial motion after the filing of an appeal may affect the effective date of an appeal's filing but it will not adversely affect the viability of the appeal itself:

> Even if we had found an unresolved ambiguity between the provisions of §§(a) and (c) of Rule 8-202, <u>we would have agreed with the better reasoned federal cases dealing with a similar question concerning notices of appeal filed before</u> or during <u>the pendency of post-judgment motions in federal criminal cases</u>. We would have concluded <u>that the ambiguity should be resolved in favor of preservation of the appeal</u>.

332 Md. at 507. The arguably premature filing of Ms. Blake's appeal does not adversely affect the viability of the appeal.

**JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED; CASE REMANDED TO CIRCUIT COURT FOR FURTHER PROCEEDINGS; COSTS TO BE PAID EQUALLY BY THE APPELLEES.**

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/1939s19cn.pdf